669 So.2d 34 (1996)
Marion A. HARDY, a Minor, By and Through His Natural and Legal Guardians, Deborah Hardy and Larry Hardy, Sr.
v.
K MART CORPORATION.
No. 92-CA-01162-SCT.
Supreme Court of Mississippi.
February 15, 1996.
*35 James K. Wetzel, Gulfport, for appellant.
*36 William L. McDonough, Jr., Bryant Clark Dukes Blakeslee Ramsay & Hammond, Gulfport, for appellee.
Before SULLIVAN, P.J., and McRAE and JAMES L. ROBERTS, Jr., JJ.
SULLIVAN, Presiding Justice, for the Court:
Marion A. Hardy appeals from a summary judgment granted by the Harrison County Circuit Court in favor of K Mart Corporation (K Mart). On December 11, 1990, Hardy filed a premises liability lawsuit against K Mart to recover for injuries he allegedly sustained when he slipped and fell on some spilled paint in a Biloxi, Mississippi, K Mart store. The trial court granted the summary judgment after it determined that Hardy failed to show either that K Mart caused his injury through its own negligence or that K Mart had actual or constructive notice of the paint spill. Finding genuine issues of material fact as to K Mart's negligence, we reverse the summary judgment as to that matter; however, we affirm the trial court's finding of no actual or constructive notice of the spill.
On May 23, 1990, Marion Hardy (Marty) and his brother Larry Hardy (Larry) left work during their lunch hour to go to the Biloxi, Mississippi, K Mart to buy some paint. Marty was 19 years old at the time of the accident, and Larry is approximately the same age as Marty. After entering the store, the two proceeded down different aisles that were side-by-side to the paint section of the home improvements department. Larry was unable to see Marty as they walked down the different aisles. Marty arrived at the end of his aisle before Larry, and as Marty rounded that aisle he slipped in a puddle of spilled paint. When Marty stepped in the paint his feet slipped out from under him, and he landed on the other side of the puddle falling on his buttocks. The puddle, which Marty did not see before he stepped in it, was approximately three feet in diameter. Larry did not see Marty fall nor did he hear the sound of any paint cans crashing prior to the fall, but he did hear the sound of his brother hitting the floor and exclaiming "Ouch."
Larry rounded the corner in time to see Marty trying to stand and proceeded to help him stand. Marty had paint all over his tennis shoes and a couple of splashes on his jogging pants and right hand. After Marty got up, he saw an open can of paint lying on the floor in front of a stack of paint cans that were displayed at the end of the aisle he rounded. According to Marty, the spilled paint had come from this can, and this can was the same as those stacked in the display. Larry, however, did not see the paint can. Marty stated that the paint was intact and not spread out very much. There were no tracks, buggy marks, or anything that indicated to him that someone before him had walked through the paint. Larry similarly testified that the only tracks he saw leading out of the spill were Marty's tracks.
At that point, Marty tried to find a K Mart employee so that he could tell them about the paint spill. He found Jerry Duprey in the garden center, which was adjacent to the home improvements department. According to Marty, Duprey was talking on the telephone when he found him. Marty stated that he walked over to Duprey and told him that he had slipped and fell on some paint and that someone needed to clean it up. Duprey responded by saying that he knew the paint was there, and he was trying to get somebody to clean it up.
Marty and Larry then proceeded to the front of the store where they purchased the paint. As Marty was walking out of the store he overheard two employees near the check-out lines talking on the telephone about the accident, and he told them that he was the one that had fallen in the paint. Marty and Larry left the store and returned to work since their lunch hour was almost over. According to Marty, the accident happened around 12:30 p.m. Marty returned to K Mart later that day around 3:30 p.m. to complete an accident report. He spoke with Robert Reuter, a Merchandise Assistant Manager and completed the report in Reuter's office.
The testimony of Jerry Duprey varies somewhat from that of Marty Hardy's testimony. Duprey testified that he first became *37 aware of the paint spill as he was talking on the telephone. According to Duprey, two young men approached him and one rudely said "get somebody over there to clean up that damn mess. I almost slipped and busted my ass." Duprey could not remember why he was originally on the telephone, but after he learned of the spill he immediately tried to call Reuter to determine what should be done since he could not leave his area unattended. Duprey further stated that he contacted Mr. Reuter at the service desk, and while he was on the telephone with Reuter the two young men returned and said "are you going to get somebody over there to clean up the damn mess or not." Duprey described the men as being about 16 to 18 years in age. He did not notice whether they had any paint on their feet or were tracking paint through the store. After Duprey found someone to cover his area, he went to the spill as directed by Reuter. Reuter shortly arrived at the spill also. When he arrived at the spill, Duprey found a paint can tipped on its side which was not damaged in any manner. He did not notice whether or not anyone had tracked through the paint, and he was unable to ascertain what caused the spill and how long the paint had been on the floor prior to Marty's accident.
Reuter testified that when he arrived at the spill he found a gallon paint can lying in the paint about two to two and one-half feet away from the display. He too was unable to tell how long the paint had been there or what caused the spill. According to Reuter, he and Duprey cleaned up the paint around 12:30 p.m. At that time he noticed that a buggy had been pushed through the spill. Reuter did not learn that Marty had fallen until Marty returned to the store later that afternoon to complete the accident report. Reuter, who managed the store's display configurations, testified that there was no manager working in the home improvements department on the day of the accident. Since there was no one in charge of that department, Reuter was responsible for checking the floor for foreign items on a periodic basis. According to Reuter, he was not aware of any company policy regarding how often he was to check the floor; however, he stated that on average he checked it twice each day. The only time that Reuter had checked the floor on that particular day was between 7:00 and 8:00 a.m.
THE CIRCUIT COURT JUDGE ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT, K MART CORPORATION.
This Court conducts a de novo review of summary judgments. Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss. 1992). When reviewing summary judgments, this Court
looks at all the evidentiary matters before [us]  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.
Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993) (quoting Mantachie, 594 So.2d at 1172) (other citations omitted)). Nonetheless, the parties remain responsible for producing evidence in relation to their respective burdens at trial. Downs v. Choo, 656 So.2d 84, 85 (Miss. 1995) (citing Daniels, 629 So.2d at 600)). In Dennis v. Searle, 457 So.2d 941 (Miss. 1984) we also stated that
[i]ssues of fact, as a matter of proper construction of Rule 56, also exist where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.
Dennis, 457 So.2d at 944.
To recover in a negligence action Hardy bears the burden of proving: (1) that K Mart owed him a legal duty, (2) K Mart breached that duty, and (3) he sustained injuries proximately resulting from that *38 breach. Palmer v. Biloxi Regional Medical Ctr., Inc., 564 So.2d 1346, 1354 (Miss. 1990) (citing Phillips v. Hull, 516 So.2d 488, 491-92 (Miss. 1987)). In the instant case, K Mart admitted that it owed Hardy a duty to keep its premises reasonably safe, and when not reasonably safe, to warn of dangers known to K Mart but unknown, hidden or concealed to its patrons. See McGovern v. Scarborough, 566 So.2d 1225, 1228 (Miss. 1990). Therefore, in order for Hardy to have recovered from K Mart, he must have produced enough evidence to show that: (1) some negligent act of K Mart caused his injury; or (2) show that K Mart had actual knowledge of a dangerous condition, yet failed to warn him; or (3) show that the dangerous condition existed long enough to impute constructive knowledge to K Mart, in other words show that K Mart should have known of the dangerous condition. Downs, 656 So.2d at 86.
The trial court determined that there was no evidence that K Mart created the paint spill. Indeed, the mere fact that the paint was spilled on the floor and that Hardy slipped in it and fell does not suffice to establish a breach of duty because the doctrine of res ipsa loquitur is inapplicable in cases such as this. Douglas v. Great Atlantic & Pacific Tea Co., 405 So.2d 107, 111 (Miss. 1981) (citations omitted). Negligence, however, may be proven by circumstantial evidence, that is "evidence of a fact, or a set of facts, from which the existence of another fact may reasonably be inferred." Mississippi Winn-Dixie Supermarkets v. Hughes, 247 Miss. 575, 585, 156 So.2d 734, 736 (1963). However, this circumstantial evidence must be such that it creates a legitimate inference that places it beyond conjecture. Downs, 656 So.2d at 90 (Sullivan, J., dissenting) (citations omitted).
Hardy contends that such a legitimate inference was created by Reuter's testimony about stacking paint cans and by a photograph of the paint display. During his deposition, Reuter testified that he would not stack paint cans on a floor display any higher than three layers. According to Reuter, any paint display higher than three layers that did not have cardboard or Formica between the layers would be unsafe. Later in the deposition, Hardy showed Reuter a photograph of a paint display in the Biloxi, K Mart that had the paint stacked in five layers, the first layer consisting of what appeared to be boxes of gallon cans of paint. Thus, Hardy posits that K Mart created an unstable display from which the paint can fell and spilled its contents.
K Mart argues that there is no evidence, circumstantial or otherwise, to support a claim that the manner of stacking cans in the display proximately caused Hardy's injury. According to K Mart, the only evidence about the spilled paint is that it came from an undamaged paint can lying about two feet from the display. Furthermore, K Mart contends that the causation element relating to the unstable display is too tenuous because Hardy's injury was not caused by a falling can or some defect in the display.
A review of the testimony reveals a fragmentary set of facts regarding this matter. First, Reuter did indeed testify that he considered stacking paint cans above three layers to be unsafe. As to the display itself, Hardy testified that the paint can he saw on the floor was the same as the paint cans in the display next to the paint spill. However, the testimony linking the number of layers of paint cans in the photograph with those in the display at the time of the accident is incomplete. According to Hardy, the photograph was taken within three weeks of the accident and was of the same exact display in the Biloxi store. Reuter testified that the display in the photograph was similar in nature to the display that was adjacent to the spill. When Duprey was shown the photograph, he stated about the cans that "That's the way they usually looked." However, no one ever expressly stated how many cans were stacked on the display at the time of the accident. It was never ascertained if K Mart actually stacked the cans above three layers in the first place or if customers came along and stacked them above three layers. Reuter testified that he checked the display after the accident and found it to be stable; therefore, he did not change it. But his testimony about checking the display is confusing. He stated "The display, if that picture shows the display, looked stable to me, *39 and we didn't alter it." He made this statement after testifying that stacking paint cans higher than three levels created an unsafe display. Furthermore, no evidence was presented to show the likelihood that a sealed paint can would pop open if it fell from such a display. Accordingly, had the facts in this matter been more fully developed, Hardy might have raised a reasonable inference that an unstable display could have caused the paint spill. In our opinion, the trial judge could not have said with reasonable confidence that the full facts of this matter had been disclosed, thus the granting of the motion was reversible error.
The trial court also found that K Mart had no actual or constructive notice concerning the paint spill. Hardy, on the other hand, contends that K Mart had both actual and constructive notice of the spill. As to actual notice, it is Hardy's contention that there is a factual dispute for jury determination relating to Duprey's testimony. Duprey testified that he first learned of the paint spill when he was approached by two young men. Hardy testified, however, that when he informed Duprey of the spill, Duprey told him that he already knew the paint was on the floor, and he was attempting to have it cleaned. Ultimately, this factual difference is irrelevant since it is undisputed that as soon as Duprey learned of the spill he immediately advised Reuter and was sent to clean it. This is similar to the situation found in J.C. Penney Co. v. Sumrall, 318 So.2d 829 (Miss. 1975). In that case we held evidence insufficient to establish negligence on the part of the store, where a clerk who knew that there was vomit on the floor in the store's foyer immediately called to clean it up, but before the janitor could arrive another customer slipped and fell in the vomit. Likewise in the instant case, K Mart was not an insurer of Hardy's safety. Its only duty was to "`eradicate the known dangerous situation within a reasonable time or exercise reasonable diligence in warning those who were likely to be injured because of the danger.'" Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss. 1992) (quoting J.C. Penney, 318 So.2d at 832)). Duprey exercised such diligence, thus this argument has no merit.
As evidence that K Mart should have known about the paint spill, Hardy points to Reuter's testimony that he saw buggy tracks through the paint spill and to the fact that Reuter had not checked the store for some four to five hours prior to the accident. This evidence, however, is insufficient to impute constructive knowledge of the spill upon K Mart. The buggy tracks fail to establish such notice because Hardy and his brother Larry testified that at the time Hardy fell they saw no footprints or tracks, other than Hardy's, coming out of the spill. The logical inference is that someone pushed a buggy through the paint in between the time Hardy fell and the time that the paint spill was cleaned. See Jerry Lee's Grocery v. Thompson, 528 So.2d 293, 295 (Miss. 1988). The fact that Reuter had not checked the floor for some four to five hours prior to the incident is likewise insufficient because it is "`just as logical to presume the liquid was spilled at 12:29 p.m. as it [was] to presume the liquid was spilled at [7:01 or 8:01 a.m.]'" Munford, Inc. v. Fleming, 597 So.2d 1282, 1285 (Miss. 1992) (quoting Waller v. Dixieland Food Stores, Inc., 492 So.2d 283, 286 (Miss. 1986)). In light of these facts, it appears that the trial court did not err in determining that K Mart did not have constructive notice of the paint spill.
For the foregoing reasons we reverse and remand in part as to K Mart's negligence; and affirm in part the summary judgment of the Harrison County Circuit Court.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
DAN M. LEE, C.J., PRATHER, P.J., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.