# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00976-SCT

*BRANDI HERRINGTON*

*v.*

*LEAF RIVER FOREST PRODUCTS, INC., A FOREIGN CORPORATION; WARREN RICHARDSON, AN INDIVIDUAL; ACKER SMITH, AN INDIVIDUAL; LEAF RIVER CORPORATION, A FOREIGN CORPORATION; GREAT NORTHERN NEKOOSA CORPORATION, A FOREIGN CORPORATION; AND GEORGIA PACIFIC CORPORATION, A FOREIGN CORPORATION, SUCCESSOR OF GREAT NORTHERN NEKOOSA CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/96 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN M. DEAKLE |
| | WILLIAM R. COUCH |
| | PATRICK W. PENDLEY |
| | CURTIS R. HUSSEY |
| | LARRY O. NORRIS |
| ATTORNEYS FOR APPELLEES: | W. WAYNE DRINKWATER, JR. |
| | MARGARET STEWART OERTLING |
| | JOE SAM OWEN |
| | JAMES H. HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 2/25/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Appellant Brandi Herrington brought a civil action against Leaf River Forest Products, et. al. in the Circuit Court of Jones County, Mississippi. After recusal of the trial judge, the action was transferred to Jackson County. Herrington's action was one of hundreds brought against Leaf River Forest Products

complaining that its pulp mill discharged 2,3,7,8-tetra-chlorodibenzo-p-dioxin ("dioxin") into the Leaf River in Perry County. The trial court granted a motion for summary judgment in favor of Leaf River Forest Products and stated that those plaintiffs with physical injury, including Herrington, had claims which lacked legally sufficient evidence to show their exposure or the mill's release of dioxin into the Leaf River. The court stated, ". . .such Plaintiffs have no medical or scientific evidence that their diseases were caused by dioxins or other chemicals of the kind discharged by the Leaf River Mill." From the lower court's grant of summary judgment, Brandi Herrington appeals assigning the following as error:

> **I. WHETHER THE TRIAL COURT ERRED IN DENYING HERRINGTON'S MOTION FOR A STAY OR IN THE ALTERNATIVE AN EXTENSION BEFORE RULING ON THE SUMMARY JUDGMENT MOTION.**

> **II. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF LEAF RIVER FOREST PRODUCTS, INC.**

## STATEMENT OF THE FACTS

¶2. Brandi Herrington lived in her father's cabin and later in her grandmother's cabin, both on the Leaf River near New Augusta, Mississippi, from 1983 through 1989. During this period, Herrington alleges Leaf River Forest Products, Inc. released dioxin into the Leaf River. Both cabins were approximately one and a half river distance miles downstream from the Leaf River pulp mill. Herrington's father often fished in the river, and she frequently ate the fish he caught. When deposed, however, Herrington's father stated that after the mill started up and the water became smelly, he went above the mill to fish and never fished below the mill again. Any contaminants from fish caught above the mill cannot be attributed to Leaf River Forest Products. However, Herrington says she also remembers the river flooding the land around the cabins and remembers water sometimes entering the cabins.

¶3. The family moved to Hattiesburg, Mississippi, in 1989. In 1990, Herrington moved to South Carolina, and she was diagnosed with Hodgkin's disease in 1991. She underwent five surgeries, and in March 1994, doctors determined she was cured. Herrington believes her exposure to fish and water from the Leaf River caused her to develop Hodgkin's disease. From the lower court's summary disposition of her action against Leaf River Forest Products, Inc. et. al., she appeals.

## STANDARD OF REVIEW

¶4. When reviewing the lower court's decision to grant summary judgment, we employ a de novo standard. ***Moore ex rel. Benton County v. Renick***, 626 So. 2d 148, 151 (Miss. 1993). The argument underlying a request for summary judgment is that there are no issues of material fact. ***Brown v. Credit Center, Inc.***, 444 So. 2d 358, 362 (Miss. 1983). Before summary judgment is granted, the lower court must determine if there are material factual questions in issue over which reasonable jurors could disagree. ***Russell v. Orr***, 700 So. 2d 619, 624 (Miss. 1997) (*citing* ***Carpenter v. Nobile***, 620 So. 2d 961, 965 (Miss. 1993)). The non-moving party is given the benefit of every reasonable doubt which arises as to whether there is an issue of material fact. ***Brown***, 444 So. 2d at 362 . On review of a grant of summary judgment, our only determination is whether there are material issues of fact to be tried. ***Mink v. Andrew Jackson Casualty Insurance Co.,*** 537 So. 2d 431, 433 (Miss. 1988).

> **I. WHETHER THE TRIAL COURT ERRED IN DENYING HERRINGTON'S MOTION**

**FOR A STAY OR IN THE ALTERNATIVE AN EXTENSION BEFORE RULING ON THE SUMMARY JUDGMENT MOTION.**

¶5. Leaf River Forest Products, Inc. included in its motion and renewed motion for summary judgment the affidavit of Dr. Joseph Rodricks, an expert in dioxin analysis, two affidavits of Warren Richardson, the pulp mill manager, and the affidavit of Professor Chirstopher Rappe, head of the Institute for Environmental Chemistry in Umea, Sweden. Herrington contends she should have been given an extension or stay in order to investigate the validity of Dr. Christopher Rappe's affidavit and to depose Dr. Rappe. Leaf River Forest Products contends summary judgment was proper even without the affidavit of Dr. Rappe. We agree with Leaf River.

## II. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF LEAF RIVER FOREST PRODUCTS, INC.

### A. Burden of Proof

¶6. Leaf River relies on our prior decisions involving its pulp mill and contends Herrington was required to undergo blood tests to establish causation. In *Beech v. Leaf River Forest Products, Inc.*, 691 So. 2d 446, 451(Miss. 1997), we held: ". . . the plaintiffs' failure to produce any proof through blood tests or other medical evidence was fatal to their claims for mental and emotional distress and fear of future disease." Herrington contends this case is one of first impression since the facts are distinct from prior cases involving Leaf River Forest Products. Because Herrington's theory of recovery is negligence and not emotional distress, nuisance, or trespass, this factual distinction is readily apparent.

¶7. In *Leaf River Forest Products, Inc. v. Ferguson,* 662 So. 2d 648 (Miss. 1995), we dealt with infliction of emotional distress and nuisance claims. We dealt with nuisance and trespass claims in *Leaf River Forest Products, Inc. v. Simmons*, 697 So. 2d 1083 (Miss. 1996). In *Beech,* we were not called on to deal with the negligence claim. 691 So. 2d at 446. In *Anglado v. Leaf River Forest Products, Inc.*, 716 So. 2d 543 (Miss. 1998), we discussed trespass and nuisance. Therefore, we must address the burden of proof required to withstand summary judgment when the theory of recovery is negligence and the damages asserted are physical injuries.

¶8. Citing our prior holdings in slip and fall cases and the language of the Fifth Circuit Court of Appeals in asbestos litigation, Herrington contends circumstantial evidence is sufficient to establish causation. Circumstantial evidence consists of "evidence of a fact, or a set of facts, from which the existence of another fact may reasonably be inferred." *Hardy v. K Mart Corp.,* 669 So. 2d 34, 38 (Miss. 1996)(*quoting Mississippi Winn-Dixie Supermarkets v. Hughes,* 247 Miss. 575, 585, 156 So. 2d 734, 736 (1963)). However, the circumstantial evidence must be such that it creates a legitimate inference that places it beyond conjecture. *Hardy*, 669 So. 2d at 38.

¶9. In 1934, we addressed circumstantial evidence and toxic contamination in another case involving the Leaf River and a plant which produced masonite boards and released effluent into the river. *Masonite Corp. v. Hill*, 170 Miss. 158, 154 So. 295 (1934). In that case, we observed :

> . . .as to inferences deduced from the facts, it is not the unqualified rule that an inference may not be based upon another inference. Numerous cases of circumstantial evidence found in our books, and many trials in the everyday experience of our bench and bar, disclose that inference upon inference is

availed and is enforced.

170 Miss. at 166, 154 So. at 298 (citations omitted). However, we also noted:

> [W]here a party, who has the burden of proof, has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, he must introduce that more explicit, direct, and satisfactory proof, or else suffer the presumption that, if the more satisfactory evidence had been given, it would have been detrimental to him and would have laid open deficiencies in, and objections to, his case, which the more obscure and uncertain evidence did not disclose.

170 Miss. at 167, 154 So. at 298 (citations omitted).

¶10. We have also held:

> On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough . . . .

***Burnham v. Tabb***, 508 So. 2d 1072, 1074 (Miss. 1987)(*quoting* W. Keeton, *Prosser & Keeton on Torts*, § 41 (5th ed. 1984)).

¶11. Herrington relies heavily on a United States Court of Federal Claims case, ***Land v. United States***, 37 Fed. Cl. 231 (1997), discussing circumstantial evidence and toxic exposure. Herrington construes the following language in that opinion in her favor:

> Thus, whether plaintiffs chose to prove their case by direct evidence or by circumstantial evidence, plaintiffs still have the burden to prove causation. . . . Plaintiffs, however, did not present any circumstantial evidence showing that their alleged illnesses were consistent with the symptoms of poisoning by either DIMP, mustard gas, nerve gas, pesticides, heribicides, elemental mercury, or any other chemical found at the Arsenal.

***Land***, 37 Fed. Cl. at 236. Herrington asserts the testimony of Dr. Hayes, her oncologist, satisfied the requirement missing in ***Land*** and was sufficient evidence of causation to defeat summary judgment here.

¶12. Herrington also cites the Fifth Circuit decision which set the standard of proof for products liability and asbestos claims. In asbestos cases, the causation test adopted by most jurisdictions was the "frequency-regularity-proximity" test. ***Slaughter v. Southern Talc Co.,*** 949 F.2d 167, 171 (5th Cir. 1991).This test, used with products liability cases involving asbestos, was applied when plaintiffs had established or defendants had conceded that asbestos was present in the areas where the plaintiffs worked or lived. ***Id.*** Herrington's evidence is insufficient to show there were abnormally high levels of dioxin in the Leaf River near her family's cabin. Therefore, this standard is of no use in deciding the validity of Herrington's claim.

### B. Herrington's Proof

¶13. Herrington's proof consists of the testimony of Dr. Hayes, her pediatric oncologist, who relied on literature on dioxin contamination, and Herrington's testimony that she was exposed to water that came

down the Leaf River from the mill. Herrington also relies on the deposition of Dr. James Pinson who is associated with the American Laboratories and Research Services group whose tests purported to show Leaf River placed dioxin into the river. We find no evidence in the deposition of Dr. Pinson to support the conclusion that there was an abnormally high level of dioxin released into the river. Dr. Pinson's evaluation is inconclusive and deals mostly with coloration of the water.

¶14. Herrington presents the court with no scientifically verifiable evidence that there was dioxin in the river near her cabin or in her body although she no doubt knew she could undergo tests to support her claim. The *Ferguson* and *Simmons* cases, on which the lower court waited to begin a summary judgment hearing in Herrington's case, both clearly identified the need for testing and scientific proof in similar contamination actions. *Ferguson*, 662 So. 2d at 657; *Simmons*, 697 So. 2d at 1085 ("Simmons, like Ferguson, presented no evidence of dioxin tests conducted on his property or his person"). Even in her reply brief, Herrington states that if we find her evidence insufficient, we should remand to give her a chance to produce such direct evidence. Herrington had an obligation to present this type of evidence before the hearing on the summary judgment motion since it was readily available. Since she did not, we must presume it would have been detrimental to her case. *See Hill*, 154 So. at 298.

¶15. She also fails to present any evidence that even if dioxin in fact caused her Hodgkin's disease, any dioxin present came from the mill owned by Leaf River Forest Products. She simply states she was exposed to fish in the river downstream from the mill in contradiction to her father's testimony, states her belief that there was dioxin in the river from the plant, and states she was diagnosed and cured of Hodgkin's disease. We have repeatedly held *post hoc ergo propter hoc* (after this consequently by reason of this) is a misplaced argument in modern tort law. *Western Geophysical Co. v. Martin*, 253 Miss. 14, 174 So. 2d 706, 716 (Miss. 1965); *Kramer Service, Inc. v. Wilkins*, 184 Miss. 483, 497, 186 So. 625, 627 (1939). "It is not enough that negligence of one person and injury to another coexisted, but the injury must have been caused by the negligence." *Wilkins*, 184 Miss. at 497, 186 So. at 627. Further, Herrington has wholly failed to show negligence of Leaf River or injury at the time of the alleged negligence.

¶16. The testimony of Dr. Hayes, Herrington's pediatric oncologist, is not supported by substantial evidence, and the trial judge correctly ruled it was insufficient to show causation. As a basis for his testimony, Dr. Hayes identifies literature he has reviewed. He suggests the literature shows a correlation between dioxin exposure and cancers of the lymphnoid system. We have held, "Only sworn denials providing a credible basis in evidence will suffice to create an issue of fact." *Strantz v. Pinion*, 652 So. 2d 738, 742 (Miss. 1995)(citing *Brown*, 444 So. 2d at 364.) Allegations without "detailed and precise facts" will not prevent summary judgment. *Strantz*, 652 So. 2d at 742 (citing *Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co.,* 554 So. 2d 884, 885 (Miss. 1989)). The testimony offered by Dr. Hayes fails to give any detailed or specific facts and gives no credible basis in evidence. He merely speculates from reading journal articles about other patients.

¶17. Dr. Hayes testified there was a correlation between dioxin exposure and lymphoid cancer based on his literature review. However, his testimony fails to address the critical link, proof of dioxin exposure, with anything more than speculation. Therefore, the trial court was correct in finding his testimony insufficient to show causation.

¶18. Herrington suggests that upon finding her evidence insufficient, we should remand for blood tests which would determine whether there is any dioxin in her body. While blood tests are not necessarily

required to meet the burden of proof in every case, these tests would have helped Herrington carry her burden of proof. Herrington refused to undergo and introduce these tests done at her own peril.

¶19. Herrington was required to bring any information she could attain to the court's attention prior to the summary judgment hearing. We presume any evidence she failed to present was detrimental to her case. The time when Herrington could have submitted to blood tests or conducted tests on the river to support her claim is past. As we have stated before, the hearing on a summary judgment motion is the flashpoint when the plaintiff's proof is evaluated. *Brewton v. Reichhold Chemicals, Inc.*, 707 So. 2d 618, 620 (Miss. 1998). Since Herrington failed to provide the lower court with sufficient evidence to support her claim at the hearing, there were no factual questions in issue over which reasonable jurors could disagree, and the motion was properly granted. No continuance was warranted since summary judgment was appropriate even without the affidavit of Dr. Rappe. Therefore, we find no error in the Jackson County Circuit Court's grant of summary judgment.

## CONCLUSION

¶20. We fully recognize a party's right to a common law negligence action against any or all actors including entities such as Leaf River Forest Products. However, as the trial court stated in its order granting summary judgment, "[Herrington has] no medical or scientific evidence that [her] diseases were caused by dioxins or other chemicals of the kind discharged by the Leaf River Mill." Herrington failed to carry her burden of proof. The failure of Herrington's evidence leaves no questions of material fact to be decided by a jury. Therefore, the grant of summary judgment by the Jackson County Circuit Court was proper and is affirmed.

¶21. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**