# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-IA-00946-SCT

*CLINTON HEALTHCARE, LLC*

*v.*

*MARY MAC ATKINSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2017 |
| TRIAL JUDGE: | HON. LARITA M. COOPER-STOKES |
| TRIAL COURT ATTORNEYS: | WARREN LOUIS MARTIN, JR. |
| | KELLY HOLLINGSWORTH STRINGER |
| | S. MARK WANN |
| | JASON RICHARD BUSH |
| | JOSEPH SPENCER YOUNG, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY COUNTY COURT |
| ATTORNEYS FOR APPELLANT: | KELLY HOLLINGSWORTH STRINGER |
| | S. MARK WANN |
| ATTORNEY FOR APPELLEE: | WARREN LOUIS MARTIN, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED - 01/10/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1. Mary Mac Atkinson alleges that she slipped on a liquid substance at Clinton Healthcare and injured her knee as a result. After the parties conducted significant amounts of discovery, Atkinson moved for a spoliation determination, requesting a spoliation jury instruction regarding a missing video, and moved for partial summary judgment as to

liability; and Clinton Healthcare moved for summary judgment. The trial court granted the motion for spoliation, granted Atkinson's motion for partial summary judgment, and denied Clinton Healthcare's motion for summary judgment. Because genuine issues of material fact exist, the trial court erred by granting Atkinson's motion for partial summary judgment, and correctly denied Clinton Healthcare's motion for summary judgment. Additionally, the trial court's order regarding spoliation and the entitlement to a spoliation jury instruction was premature. Therefore, this Court affirms the trial court's judgment in part, reverses it in part, vacates the spoliation order, and remands the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. Atkinson was visiting her mother in the nursing home facility at Clinton Healthcare on December 24, 2015. At about 10:55 a.m., Atkinson fell in the hallway of Clinton Healthcare. Clinton Healthcare contracted with Felder Services (Felder) for its housekeeping and janitorial services.[1] Several employees of both Clinton Healthcare and Felder were in the vicinity of Atkinson's fall and responded.

¶3. Atkinson testified in her deposition that some dampness was underneath her after she fell, but that she was not sure what the substance was. She did not know how long the substance had been on the floor or how it got there. Betty Thomas, a housekeeper working at Clinton Healthcare through Felder, testified in her deposition that she saw Atkinson fall. She stated that she put a sheet under Atkinson and noticed a clear liquid that she assumed was water on the floor. The sheet she placed under Atkinson got damp. Thomas saw water

---

[1]Felder settled with Atkinson and has been dismissed from this case.

2

near the door of the shower room, and had seen patients go in and out of the shower room to be showered prior to the fall. One resident had come out of the shower room about fifteen minutes before the fall. She stated that Atkinson fell "in front of" the shower room door. Lisa Fears, the director of nursing employed by Clinton Healthcare, was paged to come to the scene of Atkinson's fall. Fears testified that when she arrived shortly after the fall the sheet underneath Atkinson was damp and that Atkinson had wetness on the bottom of her shoe. She was unable to identify the substance. She testified that Atkinson was located "[r]ight near" the shower room door. Barbara McGee, an activity assistant employed by Clinton Healthcare, witnessed Atkinson's fall. She testified in her deposition that she did not see any liquid on the floor. She placed the sheet under Atkinson and did not observe any dampness on the sheet. She further testified that earlier that morning, she had showered more than one wheelchair-bound patient in the shower room in the hall where the fall occurred. McGee agreed that it was possible that residual water was present on the wheelchairs after the showers, and that she could not definitively state that no water was on the floor from those wheelchairs. She noted that they only used towels to dry the residents and that no other drying mechanism for the residents, their wheelchairs, or the floors existed. McGee also testified that she had walked down the same hall fifteen minutes before the fall and had not seen any liquid on the floor, although she was not looking for liquid on the floor. Gloria Terrell, a supervisor employed by Felder, was the Felder supervisor on duty on December 24, 2015. Terrell arrived at the site of the fall approximately one hour after the fall, after Atkinson had departed. At that time, Terrell did not observe any water on the floor.

3

Shedrick Jordan, then an employee of Felder working at Clinton Healthcare as a floor tech, saw Atkinson fall out of the "corner of his eye." He did not approach her after the fall, because several others were attending her. He testified that nothing wet was on the floor. He stated that the shower room door was approximately ten feet from where Atkinson fell. He also testified that a "wet floor" sign was out, despite testifying that the floor was not wet.

¶4.     Fears testified that she reviewed video of the North Hall where the fall occurred, but that the fall was not visible on any video. Terrell also testified that she viewed a video with the administrator and that the video did not show Atkinson's fall. Dannie Barlow, the Administrator at Clinton Healthcare, testified that he was out of town the day Atkinson's fall occurred. He was unsure of the date he returned to work, but believed it to be January 1, 2016, or after. Barlow viewed the North Hall video, queuing it from the time Fears informed him the fall occurred. Barlow testified that the video did not show the area of the fall, but it did show McGee walking toward that area to provide Atkinson aid. Clinton Healthcare's video surveillance automatically erased once storage was full, after approximately ten days.[2] Clinton Healthcare received the summons in this case on January 21, 2016. During discovery, Atkinson requested video "which shows any part of the evidence leading up to, during, or after the accident at issue," as well as video showing the floors before, during, or after Atkinson's fall. Clinton Healthcare did not preserve the video after viewing it several times, and maintained that the video was automatically erased prior to being served with the complaint. Additionally, on the day of the fall, Atkinson requested a statement regarding the

---

[2]Clinton Healthcare employees indicated that they did not download the video in order to view it, they viewed it while it was still on the server without saving it.

4

fall from Fears. Fears denied her request.

¶5. Atkinson filed a motion for spoliation of evidence and a request for the spoliation inference regarding the video. She also filed a motion for partial summary judgment as to liability. Clinton Healthcare also filed a motion for summary judgment. The trial court granted Atkinson's motion for spoliation and found that "the appropriate inference instruction shall be submitted at the trial," denied Clinton Healthcare's motion for summary judgment, and granted Atkinson's motion for partial summary judgment as to liability. A panel of this Court granted Clinton Healthcare permission to bring this interlocutory appeal. *See* Miss. R. App. P. 5; Unif. Cir. & Cty. Ct. R. 4.05.

## ANALYSIS

### *1. Preliminary Issues*

¶6. Atkinson argues that this appeal violates Mississippi Code Section 11-51-79, which provides that interlocutory appeals may not be taken from county court decisions and that certain appeals from county court must be made to the circuit court. This Court has found that its Court rules regarding appeals from county court take precedence over Section 11-51-79. ***Brown v. Collections, Inc.***, 188 So. 3d 1171, 1177-78 (Miss. 2016); ***Jackson HMA, LLC v. Harris***, 242 So. 3d 1, 4-5 (Miss. 2018). This issue is without merit.

¶7. In its reply brief, Clinton Healthcare takes issue with the fact that Atkinson's appellee's brief was due on Thursday April 26, 2018, but was not filed until Monday April 30, 2018. Clinton Healthcare states that, because the brief was untimely, it should not be considered by this Court. First, Clinton Healthcare does not cite any authority for the

5

proposition that this Court should not consider Atkinson's brief because it is untimely, thus this Court need not consider the argument. *See* Miss. R. App. P. 28(a)(6). Moreover, the rules provide that a late appellee's brief "*may* be stricken from the record *on motion of appellant* or on motion of the appropriate appellate court." Miss. R. App. P. 31(d) (emphases added). Clinton Healthcare did not file a motion to strike Atkinson's brief. Nor does it allege that the four-day-late filing caused it any injustice or prejudice. This issue is without merit.

### 2.    *Motions for Summary Judgment*

¶8.    This Court reviews grants and denials of motions for summary judgment de novo. ***Hardy ex rel. Hardy v. K Mart Corp.***, 669 So. 2d 34, 37 (Miss. 1996). The Court views the evidence in the light most favorable to the nonmoving party. ***Id.*** Summary judgment should only be granted when no genuine issue exists as to any material fact such that the moving party is entitled to a judgment as a matter of law. Miss. R. Civ. P. 56(c). "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another says the opposite." ***Miller v. Meeks***, 762 So. 2d 302, 304 (Miss. 2000). An issue of fact may also exist

> where there is more than one reasonable interpretation of undisputed testimony, where materially different but reasonable inferences may be drawn from uncontradicted evidentiary facts, or when the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.

*Id.* at 304-05.

¶9.    In a negligence action, the plaintiff must show duty, breach, causation, and damages.

6

*Hardy*, 669 So. 2d at 37-38. A business owner owes a duty to an invitee[3] to keep its premises in a reasonably safe condition and to warn the invitee of dangerous conditions that are not readily apparent. *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996). However, "[n]o proof of the operator's knowledge of the condition is necessary where the condition is created by his negligence or the negligence of someone under his authority." *Id.* Otherwise, the plaintiff must prove actual or constructive knowledge. *Id.*

¶10. Atkinson relies on the theory that Clinton Healthcare negligently created the condition by showering residents in wheelchairs and leaving standing water outside the shower room door, thus she need not show knowledge of the condition. She does not make any argument of consequence that Clinton Healthcare had actual or constructive knowledge of the substance's presence. Clinton Healthcare argues that Atkinson did not meet her burden, claiming that "no evidence" exists regarding what the substance was or how it came to be present on the floor. It concedes for purposes of summary judgment only that a substance was on the floor.

¶11. In examining Clinton Healthcare's motion for summary judgment, all evidence must be viewed in the light most favorable to Atkinson. Atkinson need not definitively prove what the substance on the floor was, as Clinton Healthcare argues. Such a holding would lead to absurd results, practically requiring a potential plaintiff to take a sampling of the substance and have it analyzed. Moreover, testimony exists that the substance was clear, and that it was likely water. Clinton Healthcare also alleges that Atkinson provides no evidence regarding

---

[3]For purposes of Atkinson's motion for summary judgment, Clinton Healthcare conceded that Atkinson was an invitee.

how the substance got on the floor. However, testimony existed that at least one resident was showered shortly before the fall, that the fall occurred in front of or very near to the shower room door, and that water may drip from wheelchairs after the showers. In *Mumford, Inc. v. Fleming*, Fleming slipped on a puddle of water that had leaked from a bottle of water. *Mumford, Inc. v. Fleming*, 597 So. 2d 1282, 1283 (Miss. 1992). An employee testified that she customarily adjusted the bottles on the shelves, and that several customers had been in the store between the last time she checked the aisle and the time of the accident. *Id.* She denied ever having handled the bottles in a way that would open them. *Id.* at 1285. The trial court denied Mumford's motion for a judgment notwithstanding the verdict, which claimed that the evidence was insufficient to show that Mumford breached a duty to Fleming. *Id.* at 1283. This Court reversed the denial as to Mumford's actual or constructive knowledge, but upheld it on the issue of whether the puddle was created by Mumford's negligent acts. *Id.* at 1284-85. The Court noted that, based on the employee's testimony, "the jury could have found one of the customers caused the bottle to leak, [but] it was also possible that the jury–having heard Ford-Cuevas's testimony and viewed her credibility–found she either failed to see the puddle or she adjusted the water bottles and accidentally caused one of them to leak." *Id.* at 1285. It noted that the factual question of causation "was subject to different determinations." *Id.* Thus, it determined that the issue of causation was properly a jury question. *Id.* Similarly, in *Mississippi Winn-Dixie Supermarkets v. Hughes*, Hughes slipped on pasta in the aisle. *Miss. Winn-Dixie Supermarkets v. Hughes*, 156 So. 2d 734, 735 (Miss. 1963). The evidence at trial showed that the pasta package looked as if it had

been cut or gouged and that the store's employees unpacked boxes of merchandise using case cutters. *Id.* at 737. It also showed that, shortly before the fall, several children had run out of the store with loose pasta in their hands. *Id.* The Court found that, considering this evidence and the reasonable inferences that flow from it, the trial court properly submitted the issue of liability to the jury because the children causing the spill and the employees causing the spill were both reasonable interpretations of the evidence. *Id.*

¶12. Atkinson need not *definitively* prove the exact identity of the substance or how it came to be on the floor.[4] Negligence "may be found from circumstantial evidence of adequate probative value." *Id.* at 736. "[T]he plaintiff may prove circumstances from which the jury might conclude reasonably that the condition of the floor was one which was traceable to the proprietor's own act or omission, in which no proof of notice is necessary[.]" *Id.* Juries may reasonably infer the existence of one fact from the existence of another fact or set of facts. *Id.* "Verdicts may rest upon reasonable probabilities." *Id.* When viewing the evidence in the light most favorable to Atkinson, Atkinson produced evidence that residents in wheelchairs were showered shortly before her fall, that standing water was in front of the shower room door, that she slipped in front of the shower room door, and that no drying mechanism other than towels was used for drying residents after showers. For the purposes of summary judgment and viewing the evidence and its inferences in the light most favorable to Atkinson, Atkinson produced sufficient evidence such that a jury could infer that Clinton Healthcare created the situation by failing to properly dry residents and/or their wheelchairs

---

[4]Atkinson's not needing to produce absolute definitive proof does not relieve her of the burden of proof at trial.

9

after showering them. Atkinson "should be given the benefit of *every reasonable doubt*." *Renner v. Retzer Resources, Inc.*, 236 So. 3d 810, 815 (Miss. 2017). When doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial. *Id.* That is exactly what the trial court did here. Therefore, the trial court did not err by denying Clinton Healthcare's motion for summary judgment.

¶13. When reviewing the trial court's grant of summary judgment on liability in favor of Atkinson, this Court reviews the evidence in the light most favorable to Clinton Healthcare. While several witnesses testified that a substance was on the floor where Atkinson fell, two witnesses testified that no substance was on the floor where Atkinson fell. "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another says the opposite." *Miller*, 762 So. 2d at 304. More than one witness swore that no substance, the presence of which is the heart of the lawsuit, was even present. This is clearly a case in which issues of fact sufficient to require a denial of summary judgment are present because some witnesses swore to one version of the matter in issue, and others swore to the opposite version. Therefore, the trial court erred by granting Atkinson's motion for partial summary judgment as to liability.

### 3. Spoliation

¶14. Clinton Healthcare argues that the trial court's order finding that spoliation had occurred and ordering that an "appropriate" spoliation inference instruction be given at trial

was improper because it did not destroy evidence negligently or fraudulently. It also argues that this Court may provide guidance in the event this issue is premature.

¶15. "Jury instructions are to be granted only where evidence has been presented which supports the instruction." *DeLaughter v. Lawrence Cty. Hosp.*, 601 So. 2d 818, 824 (Miss. 1992). The *jury* must hear the evidence at trial for the *jury* instruction to be proper. "Therefore, evidence or argument from a pretrial hearing is not a basis for a spoliation instruction." *Teal v. Jones*, 222 So. 3d 1052, 1059 (Miss. Ct. App. 2017). Evidence regarding the circumstances surrounding the missing evidence must be presented at trial so the jury may determine the significance. *Id.* This Court has also held that "the explanation for the original record's absence may be fully satisfying either that it was lost through no fault of the [party], that the [party] deliberately destroyed it, or as in most cases, somewhere in between, *thereby making it a jury issue*." *DeLaughter*, 601 So. 2d at 821 (emphasis added). When the evidence falls within the "in between" range, "the instruction should require the jury to first determine whether reasonable explanation for the loss of the missing original [evidence] has been presented . . . ." *Id.* at 822. If the jury determines that no reasonable explanation for the loss has been presented, it may then infer that the evidence would have been unfavorable to the party responsible for the loss. *Id.*

¶16. Mandating that a spoliation instruction be given at trial before a trial even happens, as occurred in this case, was inappropriate, as the trial court does not know what evidence regarding spoliation will be presented to the jury, and thus cannot know whether the evidence at trial will support the instruction. If the evidence at trial "reveals that the video was lost

11

intentionally or negligently," Atkinson would at that point be entitled to a spoliation jury instruction. *See* **Renner**, 236 So. 3d at 816. If the evidence is, as in **DeLaughter**, not clear either way, then that issue would be a jury issue.

## CONCLUSION

¶17.    This Court affirms the trial court's denial of Clinton Healthcare's motion for summary judgment and reverses the trial court's grant of Atkinson's motion for partial summary judgment on liability. This Court vacates the trial court's order regarding spoliation as premature, as the trial court cannot grant a jury instruction without knowing what evidence is before a jury. We remand this case for further proceedings not inconsistent with this opinion.

¶18.    **AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.**

        **WALLER, C.J., KITCHENS, P.J., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.**


        **COLEMAN, JUSTICE, DISSENTING:**

¶19.    As was the case in **Jackson HMA, LLC v. Harris**, 242 So. 3d 1, 7-8 (¶¶ 14-19) (Miss. 2018) (Coleman, J., dissenting), I must, with respect, dissent. The Mississippi Supreme Court does not have jurisdiction to hear the instant appeal. The Mississippi Legislature, which we have previously acknowledged has plenary power over Supreme Court jurisdiction and to which our State's Constitution grants explicit authority to set circuit court appellate jurisdiction, chose to prohibit interlocutory appeals from county courts and to direct that

12

appeals of matters such as the one *sub judice* be taken in circuit court when they are taken. Today, the majority runs roughshod over both directives, as the instant appeal is both an interlocutory appeal from county court and made directly to the Supreme Court.

## I.      The Legislature's Power to Set Appellate Jurisdiction

¶20.    As ratified in 1890, Article 6, Section 146 of the Mississippi Constitution read, "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals." In 1984, however, the people of Mississippi amended our constitution to read, "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and *shall exercise no jurisdiction on matters other than those specifically provided* by this Constitution or by general law." Miss. Const. art 6, § 146 (emphasis added). Jurisdiction is nothing more or less than the power of a given court to decide a matter. *City of Jackson v. Allen*, 242 So. 3d 8, 21 (¶ 49) (Miss. 2018) (citing *Jurisdiction*, Black's Law Dictionary (10th ed. 2014)); *see also In re Steen*, 160 Miss. 874, 134 So. 67, 72 (1931) ("'Appellate jurisdiction' is defined to be the power and authority conferred upon the Supreme Court to hear and determine causes which have been tried in inferior courts.") (citation omitted). There can be no other interpretation of post-amendment Article 6, Section 146, than the following: In order for the Mississippi Supreme Court to have the power and authority to hear an appeal, that power must be granted either by the language of the Constitution itself or in the general laws of the State as expressed in the statutes passed by its Legislature. The Court acknowledged as much in *Dialysis Solutions, LLC v. Mississippi State Department of Health*, 96 So. 3d 713 (Miss. 2012), where we held– and not for the first time– that the Legislature exercises "plenary

13

power" over appellate court jurisdiction. *Id.* at 716-717 (¶ 8).

¶21. In addition, the Constitution without ambiguity or equivocation grants to the Legislature the authority to establish appellate jurisdiction in the circuit courts of the State. Article 6, Section 156, of the Mississippi Constitution of 1890 provides, "The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, *and such appellate jurisdiction as shall be prescribed by law.*" (Emphasis added.)

**II.    The Statute Passed by the Legislature Pursuant to Its Constitutional Authority to Set Appellate Jurisdiction that Governs Appeals from County Courts**

¶22. In Mississippi Code Section 11-51-79, the Mississippi Legislature prescribed appellate jurisdiction in Mississippi's circuit courts over appeals from county courts. Among other things, Section 11-51-79 prohibits interlocutory appeals from county court and requires that appeals from the "law side" of county courts be presented to the circuit court. On its face, Section 11-51-79 constitutes a clear example of the Legislature exercising power derived from the constitutional provisions described above. Today, and as it has in the past, the Court disregards the provisions of the Constitution itself when it takes jurisdiction over the controversy before it in violation of Section 11-51-79.

¶23. *Brown v. Collections, Inc.*, 188 So. 3d 1171 (Miss. 2016), cited by the majority for its holding that Section 11-51-79 must give way to various rules of court procedure with which it conflicts, contains no discussion of the above-described constitutional grant of authority to the Legislature to set appellate jurisdiction in both the circuit courts and the Mississippi Supreme Court. Although *Brown* was a near-unanimous decision in which I

14

concurred,[5] I would now overrule it.

¶24. Pursuant to the separation of the powers exercised by the three branches of Mississippi's government, and as held in *Newell v. State*, 308 So. 2d 71 (Miss. 1975), the courts have sole authority to set rules of court procedure. However, the power to set appellate jurisdiction in the circuit court and, pursuant to Article 6, Section 146, quoted above, in the Supreme Court rests with the Legislature and specific provisions of the Constitution. No specific provision in the law or the Constitution grants jurisdiction to the Supreme Court over appeals from county courts.

¶25. The *Brown* holding, as applied today, gives the courts the power to set their own jurisdiction over appeals with rules of procedure, which runs directly contrary to the applicable constitutional provisions that give that exact authority. Moreover, it is worth noting that the *Brown* Court did not include any discussion of the above-quoted constitutional provisions that explicitly grant the Legislature the power over appellate jurisdiction. Indeed, a review of the briefs of the parties in *Brown* shows that neither party cited them to the Court. We should now consider the impact of the explicit language of our constitution on the *Brown* Court's holding that the rules of procedure act to overrule a statute passed under an express grant of constitutional authority.

¶26. "[A]ppellate jurisdiction is solely a creature of statute and exists in no case unless conferred by statute, and then only in the manner and to the extent so conferred. . . ." *Drummond v. State*, 184 Miss. 738, 185 So. 207, 208 (1938). The *Drummond* Court went

---

[5]Justice Lamar concurred in part and in result without a separate written opinion.

15

on to hold as follows:

> It follows, therefore, inescapably, that since the legislature has plenary power over this subject of appeals, it could prescribe that an appeal from this inferior court in this class of cases, or in any other particular class of cases, might be direct to the Supreme Court. If the power of the legislature in this regard is to be restricted or limited, then some section of the Constitution must be pointed to which so limits or restricts the power. As already mentioned, no such section of the Constitution can be found. It is, therefore, a matter solely for the legislature to decide, and the legislature having so decided, the Court is without power to avoid this said legislation.

*Id.* at 209. The Court has taken for itself the power to hear interlocutory appeals from Mississippi's county courts. It is nowhere granted to us by the Constitution of 1890 or general law. I would dismiss the instant appeal for lack of jurisdiction.

**RANDOLPH, P.J., JOINS THIS OPINION.**

16