**REVISED OCTOBER 8, 2018**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60431

HARVEY LEE FUNCHES,

United States Court of Appeals
Fifth Circuit

**FILED**

September 28, 2018

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

PROGRESSIVE TRACTOR AND IMPLEMENT COMPANY, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:

Harvey Lee Funches lost his left arm when his vehicle collided with a piece of farm equipment being towed by a pickup truck as the two passed one another on a Mississippi road. The only live dispute left in this case is Funches's suit against Progressive Tractor and Implement Company, L.L.C., the company that leased the equipment to the driver of the pickup truck. In the suit, Funches alleged, *inter alia*, that the company was negligent in failing to warn the pickup truck's driver of the dangers associated with towing the equipment with a pickup truck instead of a tractor. The district court granted

No. 17-60431

summary judgment in favor of the company on the failure-to-warn claim (as well as Funches's other claims), finding that Funches failed to create a genuine factual dispute regarding the essential element of proximate cause. Funches appeals the district court's order. We AFFIRM.

## I.

## A.

On the afternoon of March 30, 2015, Harvey Lee Funches was traveling in his truck down a two-lane road in Warren County, Mississippi. Approaching in the opposite lane was Chase Noland, a farmer, driving a pickup truck with a farm disc[1] in tow. When the two passed one another, the farm disc collided with Funches's truck. Funches, who was traveling with his left arm either on or outside his driver-side window, had his left arm severed by the disc's blades.

Two days prior to the accident, Noland rented the disc from Progressive Tractor and Implement Company, L.L.C. ("PTI"), a Louisiana equipment dealer and the appellee in this case. At the time of the accident, Noland was en route from his farm in Start, Louisiana, to another one of his farms in Utica, Mississippi.

The disc Noland rented had a warning decal on the tongue near its hitch. The decal contains an illustration juxtaposing a pickup truck towing the disc and an agricultural tractor towing the disc. A large red X is over the truck. The decal also states:

---

[1] A farm disc is a large agricultural device with sharpened blades used to till soil.

No. 17-60431

# ⚠ WARNING

## TOWING HAZARD

- Properly prepare machines for transport / roading.
- Transport with Ag Tractor <u>only</u> – MAX. road speed 20 mph [32 kph].
- Total weight of towed unit, <u>not to exceed</u> 1.5 times weight of tractor.
- Use caution when on turns, inclines, or hazardous road conditions to avoid loss of control.
- Attach proper size safety chain and electrical connector.

Failure to comply could result in death or serious injury.

The disc came with an operator's manual, which contained the warning present on the decal, as well as other safety information. Noland's truck weighed less than the minimum weight prescribed by the warning decal.

At his deposition, Noland said that he did not read the decal or the manual. Noland also said that if someone at PTI had advised him against hauling the disc with his pickup truck, he would not have done so. On the day Noland picked up the disc, Buie Cumpton, a PTI employee, was present and allowed Noland to drive away towing the disc with his pickup truck.

**B.**

Funches initially filed suit against Noland in Mississippi state court. Because the parties were of diverse citizenship and the amount in controversy exceeded the minimum amount required by federal law, Noland removed the case to federal court. After removal, Funches amended his complaint to add as defendants PTI, the disc's manufacturer, and two entities associated with Noland's farming operation. Funches has since settled his suits against the other defendants; only his claim against PTI remains. Funches sued PTI on theories of vicarious liability, breach of its rental agreement with Noland, and

## No. 17-60431

negligence.[2] The district court granted summary judgment on each of these claims.

## II.

A district court's grant of summary judgment is a question of law, which we review de novo. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This occurs when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although we draw all reasonable inferences in favor of the nonmovant at the summary judgment stage, a mere "scintilla of evidence" in support of plaintiff's position will not do, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), nor will "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Under the *Erie* doctrine, a federal court applies state substantive law and federal procedural law to diversity cases. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties do not dispute that Mississippi substantive law applies to this case.

## III.

### A.

Before we consider Funches's negligence claim, we must first determine which Mississippi law should apply. Although both parties appear to present their arguments under the rubric of the common law, they cite frequently to

---

[2] As Funches raises only his negligence argument in his brief on appeal, we treat his other claims as waived. *See In re Age Refining, Inc.*, 801 F.3d 530, 539 & n.23 (5th Cir. 2015); *see also* Fed. R. App. P. 28(a)(5).

the Mississippi Products Liability Act ("MPLA"), and the facts of this case raise the possibility that the MPLA applies.

The Mississippi legislature enacted the MPLA in 1993. The preamble of the original act stated that it was applicable to "any action for damages caused by a product except for damage to the product itself." H.B. 1270, 1993 Leg., Reg. Sess. (Miss. 1993). The MPLA contemplates several types of claims. Relevant here, the MPLA allows for an action alleging that "[t]he product was defective because it failed to contain adequate warnings or instructions." Miss. Code Ann. § 11-1-63(a)(i)(2).

Despite the preamble's capacious language, Mississippi courts have interpreted the MPLA narrowly. First, seizing on the original MPLA's frequent references to "manufacturer or seller," Mississippi courts interpreted the MPLA to exclude suits against "mere designers," and required such suits to proceed under the common law. *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1029 (Miss. 2011). Additionally, after the Mississippi Supreme Court allowed a common law claim of breach of implied warranty to proceed against drug manufacturers despite the MPLA providing for no such action, scholars commented that the court had interpreted the act as "*supplement[ing]*, rather than supplant[ing], [Mississippi's] common law products liability jurisprudence." Mississippi Law of Torts § 15.3 (2d ed. 2017) (citing *Bennett v. Madakasira*, 821 So. 2d 794, 808 (Miss. 2002), *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116 (Miss. 2010)).

The Mississippi legislature responded to these narrowing constructions by amending the MPLA in 2014. *See* H.B. 680, 2014 Leg., Reg. Sess. (Miss. 2014). The amendment made two significant changes. First, it added the word "designer" to each of the Act's references to "manufacturer or seller," thereby bringing a case like *Lawson* into the MPLA's ambit. *Id.* Second, the legislature amended the preamble to clarify that the MPLA applies to "any action for

damages caused by a product, *including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty,* except for commercial damage to the product itself." *Id.* (emphasis added to reflect language inserted by 2014 amendment).

Following the enactment of the 2014 amendments, the Mississippi Supreme Court clarified that "[t]he MPLA provides the exclusive remedy 'in any action for damages caused by a product' against a product manufacturer[,] [designer,] or seller." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 270 (Miss. 2015) (quoting Miss. Code Ann. § 11-1-63(a)); *id.* at 270 n.31 (referencing the 2014 MPLA amendment adding "designers"). However, the Mississippi Supreme Court cabined the scope of the MPLA in that same case. Although it found that the MPLA governed claims against manufacturers, sellers, and designers, the court did not apply the MPLA to the plaintiff's claims against a common carrier that transported the allegedly defective product. *See id.* at 271. Instead, the court held that those claims were governed by the common law. *Id.* The upshot of *Elliott* appears to be as follows: although the MPLA supplies the exclusive remedy for products liability claims against manufacturers, designers, and sellers of a product, its scope remains limited to those three categories.

In the case at bar, the only remaining defendant is PTI, the *lessor* of the disc. Accordingly, the applicability of the MPLA hinges on whether PTI, as a lessor, is equivalent to a "seller" of the disc. Mississippi courts have not opined as to whether a lessor is a seller under the MPLA. Mississippi law requires that we interpret words in its statutes "according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning." Miss. Code Ann. § 1-3-65. In interpreting the word "manufacturer" as used in the MPLA, the Mississippi Supreme Court looked to "its common and popular meaning" and consulted dictionaries to do so.

No. 17-60431

*Lawson*, 75 So. 3d at 1028. Thus, we consider the "common and ordinary acceptation and meaning" of the word "seller."

Dictionaries prove somewhat unhelpful to this endeavor. *See, e.g.*, *Seller*, Am. Heritage Dictionary (5th ed. 2018) ("One that sells; a vendor."). However, Black's Law Dictionary provides a useful clue. *See Seller*, Black's Law Dictionary (10th ed. 2014) ("1. Someone who sells or contracts to sell goods; a vendor. UCC § 2-103(1)(d). 2. Generally, a person who sells anything; the transferor of property in a contract of sale."). In its first definition, Black's references Article 2 of the Uniform Commercial Code. Importantly, Article 2 of the UCC deals with sales of goods, in contrast to Article 2A of the UCC, which deals with *leases* of goods. *Compare* UCC § 2-101 (Am. Law Inst. & Unif. Law Comm'n 2003) ("This Article shall be known and may be cited as Uniform Commercial Code–Sales."), *and* UCC § 2A-102 ("This Article applies to any transaction, regardless of form, that creates a lease.").

Moreover, the legislature's choice to specifically include "designers" in its 2014 amendment—as opposed to an amendment that would extend liability to a broader category, such as "any person who makes a product available to the public"—suggests that the legislature did not intend to expand the MPLA beyond the three specific categories identified. The Mississippi Supreme Court has previously looked to amendments to a statute as evidence of the legislature's intent to exclude omitted matters from its statutes. *See Vanzandt v. Town of Braxton*, 14 So. 2d 222, 224 (Miss. 1943) (refusing to read Mississippi statute allowing for personal liability for unpaid taxes to extend to school district taxes because "[t]he statute ha[d] been amended from time to time to include new taxes as they ha[d] come into existence" but "it ha[d] not been amended so as to include separate school district taxes" (citation omitted)).

7

No. 17-60431

Because the Mississippi Supreme Court has not determined whether lessors are covered by the MPLA, we must make "an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with this case." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 208 (5th Cir. 2007). Based on the data discussed above, we conclude that the MPLA does not apply to products liability suits against a lessor of goods. So, following the holding in *Elliott*, 181 So. 3d at 271, we apply Mississippi common law to Funches's claims against PTI.

## B.

We now turn to the merits of Funches's negligence claim. In their briefing, the parties address the issues of causation and duty. Because the district court based its grant of summary judgment on Funches's failure to create a genuine dispute on the issue of proximate cause, we will begin our analysis there.

A *prima facie* negligence claim consists of four core elements: duty, breach, causation, and harm. *See Elliott*, 181 So. 3d at 269 (citations omitted). Plaintiff bears the burden of proof on each of these issues. *See Huynh v. Phillips*, 95 So. 3d 1259, 1262 (Miss. 2012). Under the federal summary judgment standard, if the court determines that a reasonable juror could not find in the plaintiff's favor on any one of these elements, a grant of summary judgment for the defendant is appropriate. *See Anderson*, 477 U.S. at 250-51.

The third element, causation, is often broadly described under Mississippi law as proximate cause. *See* Encyclopedia of Mississippi Law § 52:19 (2d ed. 2017).[3] Proximate cause consists of two elements: factual cause

---

[3] The terminology Mississippi courts use to describe causation does not appear to be entirely uniform. *See* Mississippi Law of Torts § 3:17 ("In discussing the element of causation, it must first be noted that the term 'proximate cause' is sometimes used when the court is referring to cause-in-fact, often when the court is referring to legal cause, and frequently when the court is referring to both."). Because both parties and the district court appear to

8

and legal cause. *Id.* Factual cause incorporates a counterfactual theory of causation: its existence depends on whether the plaintiff's injury would have occurred but for the defendant's negligence. *Glenn v. Peoples*, 185 So. 3d 981, 986 (Miss. 2015) (citing *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007)). When a plaintiff's injury is the result of the acts of more than one tortfeasor, Mississippi law allows the plaintiff's burden of demonstrating factual cause to be discharged through a showing that defendant's negligence was a "substantial factor in bringing about the harm." *Id.* The question of legal cause centers around whether "the damage is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act." *See id.* (quoting *Glover*, 968 So. 2d at 1277).

On appeal, Funches contends that PTI's failure to warn Noland of the dangers associated with hauling a farm disc with a pickup truck was the proximate cause of his injury. On factual cause, he argues that (1) if Noland had used a tractor, instead of his pickup truck, to tow the farm disc, his injury would not have occurred; and (2) Noland would have used a tractor had he been warned of the danger of hauling the farm disc with his pickup truck. As evidence, Funches points to Noland's remark at his deposition that he would not have hauled the disc with his pickup truck had PTI warned him against doing so. He also alludes to the report of his expert, an accident reconstruction specialist, which concludes that, more likely than not, the accident occurred in Funches's lane of traffic. Funches's argument centers around the idea that PTI's failure to warn led Noland to tow the disc with his pickup truck, that

---

use the term proximate cause to refer to both factual and legal cause, we will use the term proximate cause in the same manner.

hauling the disc with a pickup truck created a greater risk of injury, and that this heightened risk caused the accident.

The district court rejected this argument. It found that even if Noland had been properly warned and had used a tractor to haul the farm disc, there was no evidence that this change in method would have made a difference. That is to say, the court found that Funches failed to put factual cause at issue.

Like the other three elements of the *prima facie* case of negligence, Funches bears the burden of proof on the issue of causation. For factual cause, this burden requires a plaintiff to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough. . . ." *See Herrington v. Leaf River Forest Prods., Inc.*, 733 So. 2d 774, 777 (Miss. 1999) (quoting *Burnham v. Tabb*, 508 So. 2d 1072, 1074 (Miss. 1987)). While a plaintiff need not provide direct evidence of causation, the circumstantial evidence presented must "be such that it creates a legitimate inference [of causation] that places it beyond conjecture." *Id.*

Funches failed to put forth any evidence before the district court—direct or circumstantial—that corroborated his conclusory assertion that the pickup truck's lack of control over the farm disc led to his accident. At oral argument, Funches's counsel averred that the difference between using a pickup truck and using a tractor is "control." According to counsel, using a pickup truck created a "tail-wagging-the-dog" dynamic between the farm disc and the pickup truck, which led the farm disc to swing into Funches's lane and caused the accident. But when pressed for evidence that control was material to the accident, counsel came up empty. This does not appear to be a game-day blunder: the district court also noted that counsel was unable to present such evidence at the summary-judgment hearing.

The evidence Funches marshals in his briefing on this point is inapposite. Although Funches's expert concluded that the accident likely occurred in Funches's lane of traffic, he expressly based this conclusion on the fact that the dimensions of the disc made it likely to *protrude* over the center line. The report makes no reference to control of the disc or the possibility of the disc swinging. In fact, its conclusion bolsters the claim that control made no difference: if the dimensions of the disc exceeded the size of the lane, the disc would have protruded over the line had it been towed by a pickup truck, tractor, or any other vehicle. The same goes for Funches's argument suggesting that the "size, weight, protruding blades, etc." of the disc made it more likely that the disc would cause injury if towed by a pickup truck. Although these factors may have caused the disc to protrude into Funches's lane, Funches brought no evidence before the district court suggesting that the disc's being towed by a pickup truck rendered it more likely to *swing* into the lane.

All that remains, then, is Funches's naked "tail-wagging-the-dog" hypothesis. This, without evidence, amounts to mere conjecture—the possibility of causation. The Mississippi Supreme Court has made clear that more is required. *See Herrington*, 733 So. 2d at 777. Accordingly, Funches failed to demonstrate the element of factual cause to such a degree that a reasonable juror could find in his favor. A grant of summary judgment was therefore appropriate.

Because we conclude that Funches has failed on the essential element of factual cause, we need not confront the question of legal cause. Similarly, our resolution of the causation issue renders delving into the parties' dispute over whether PTI had a duty to warn Noland unnecessary. *See K-Mart Corp. v. Hardy ex rel. Hardy*, 735 So. 2d 975, 981 (Miss. 1999) ("In order to prevail on a negligence clam, a plaintiff must prove by a preponderance of the evidence *each*

element of negligence: duty, breach of duty, proximate causation, and injury." (emphasis added)).

We conclude that summary judgment was appropriate in favor of PTI on Funches's failure-to-warn claim. The judgment of the district court is therefore AFFIRMED.