# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60001

United States Court of Appeals
Fifth Circuit

**FILED**
December 6, 2018

Lyle W. Cayce
Clerk

GEORGE MEARS,

>      Plaintiff - Appellant

v.

LANCE FAGAN JONES; MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY,

>      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:17-CV-6

Before STEWART, Chief Judge, KING and OWEN, Circuit Judges.

PER CURIAM:*

George Mears appeals the district court's grant of summary judgment in favor of Lance Fagan Jones and Mississippi Farm Bureau Casualty Insurance Company on his negligence, negligent misrepresentation, and failure-to-train claims, as well as his claims for vicarious liability. He also appeals the district

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60001

court's refusal to award punitive damages. We AFFIRM IN PART and REVERSE and REMAND IN PART.

## I.

### A.

This dispute results from a suspected case of arson by a third party and the insurance claim that followed. In May 2015, George Mears contacted insurance agent Lance Fagan Jones seeking builders risk and home owners insurance for a home he intended to build in Long Beach, Mississippi. During their first conversation, Mears indicated to Jones that he wished to obtain $400,000 in coverage. In June 2015, Jones provided Mears with a nonbinding quote from Lexington Insurance Company for that amount.

About a year after they initially made contact, Mears contacted Jones and told him that he was ready to begin construction and wanted to finalize his insurance policy. Jones thereafter sought out quotes from Lloyd's of London and the Mississippi Residential Property Insurance Underwriting Association ("MRPIUA"), the state's insurance agency. Altogether and including the prior Lexington quote, Jones sought quotes from three agencies.

The parties dispute what happened next. According to Mears, Jones informed him that his only insurance option was the MRPIUA policy, which had a maximum limit of $200,000.[1] Mears wrote in an affidavit that Jones stated that "no other insurer would write coverage for properties on the beach and that the maximum amount of coverage that could be obtained under any circumstances was $200,000." At his deposition, Mears testified that Jones told him that Lexington would no longer provide the earlier-quoted insurance

---

[1] Mears denies any awareness of the Lloyd's quote, and maintains that any such quote would be "meaningless" because it only provided $200,000 of coverage and did not provide wind coverage.

2

because it "was not going to write the policy based on upon the [house's] location . . . on the beach."

Contrary to Mears's account, Jones avers that he provided all three quotes to Mears at this time, including the Lexington quote for $400,000. Jones claims that he gave Mears the opportunity to choose the higher Lexington quote but Mears refused and instead opted for the MRPIUA policy.

In October 2016, Mears's under-construction house burned to the ground as the result of a suspected arson attack. After the fire, MRPIUA paid out the policy limit of $200,000. Mears claims that the fire caused damages far in excess of the $200,000 policy. According to Mears's complaint, Mears subsequently discovered that there were other available insurance policies that would have covered the entire value of his house.

**B.**

Also of relevance to this appeal is Jones's relationship to appellee Mississippi Farm Bureau Casualty Insurance Company ("Farm Bureau"). Jones and Farm Bureau entered into an "agent contract" in 2007, which governs their relationship. The contract appoints Jones "to act as a licensed sales representative for [Farm Bureau]," but it specifies that he is "an independent contractor." It clarifies that Jones is "responsible and answerable for any breaches hereto or acts of negligence" caused by him or anyone working on his behalf and gives him the freedom to control his "daily activities and the means by which the provisions of [the agent contract] are carried out." The contract allows Jones to represent and sell insurance from other insurance companies but only after receiving prior written consent from Farm Bureau. It also requires Jones to follow the guidelines and instructions contained in Farm Bureau's rate books, manuals, and underwriting guidelines, "provided, however, that such guideline, manuals, or instructions shall not interfere with

No. 18-60001

[Jones's] status as an independent contractor." Jones has not worked for any insurance company other than Farm Bureau.

Jones operates out of two offices, both of which bear a Farm Bureau sign on the front of the building. Jones's email signature states "MS Farm Bureau Insurance." Jones is also featured on the "Mississippi Farm Bureau" website as an "agent."[2] The record is not precisely clear as to the relationship between Mississippi Farm Bureau and Mississippi Farm Bureau Casualty Insurance Company, but it is evident that the two are not one and the same. There is no indication in the record that Jones has his own website or advertises separately from Mississippi Farm Bureau.

## C.

On January 9, 2017, Mears brought the instant action against Jones and Farm Bureau in federal district court under the court's diversity jurisdiction. Mears alleged that Jones was negligent in advising him on what insurance he could and should purchase and in finding insurance for him. He also alleged that Jones was liable for negligent misrepresentation for telling him that only the MRPIUA policy was available. Mears sought to hold Farm Bureau liable for both claims on a theory of vicarious liability. He also alleged that Farm Bureau was directly liable for its failure to train and supervise Jones. Mears sought compensatory and punitive damages.

The district court granted Jones and Farm Bureau's motion for summary judgment as to all of Mears's claims in two separate orders. On Mears's negligence claim against Jones, the court found that there was no Mississippi caselaw imposing a duty on an insurance agent to advise an insured as to the

---

[2] Jones and Farm Bureau correctly point out that this website is the website for Harrison County Farm Bureau (an organization, they submit, that has no direct connection to Mississippi Farm Bureau Casualty Insurance Company). But both Harrison County Farm Bureau and appellee Mississippi Farm Bureau Casualty Insurance Company host their websites on the same domain: "Mississippi Farm Bureau Insurance" (i.e., www.msfbins.com).

availability of other coverage options. On Mears's negligent misrepresentation claim, the district court determined that Jones's statement that other insurance options were not available was a statement of an opinion as to future events and not a statement of present fact, as is required under Mississippi law for a negligent misrepresentation claim.

The district court also refused to hold Farm Bureau vicariously liable. It first determined that the doctrine of apparent authority was not applicable; the court concluded it was not reasonable for Mears to rely on the existence of an agency relationship between Jones and Farm Bureau because Jones's alleged representations concerned non-Farm Bureau insurance products. It also refused to find that Farm Bureau was liable on a theory of respondeat superior as the employer of Jones because Jones's agent contract designated him as an independent contractor. The district court also found that Farm Bureau was not directly liable for failing to train or supervise Jones because Mears failed to establish "that Farm Bureau had a duty to train Jones on a product that was not its own." Finally, the court found that punitive damages were not appropriate as to either defendant. Mears appeals each of these orders.

## II.

### A.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Kubow v. Hartford Cas. Ins. Co.*, 475 F.3d 672, 674-75 (5th Cir. 2007). Summary judgment is warranted when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Our role at this stage is not to weigh the evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Instead, this court must view the evidence in the light most favorable to the nonmovant and draw

No. 18-60001

all legitimate inferences in his favor. *Id.* At summary judgment, the central question is whether a reasonable jury could return a verdict for the nonmovant. *Id.* at 248.

In diversity cases, we apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In doing so, we look to the decisions of the highest court in the state. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243-44 (5th Cir. 2012). In the absence of an on-point decision from the highest court in the state, we make an "*Erie* guess" as to how the court would decide the case, considering relevant precedent from the state's highest court and decisions from the its intermediate appellate courts. *Id.* The parties do not dispute that the applicable law in this case is the law of Mississippi.

**B.**

Mears first challenges the district court's grant of summary judgment as to his negligence claim against Jones. Although Mears's initial complaint alleged several potential acts of negligence on the part of Jones, Mears focuses his appeal on Jones's failure to advise him as to other available insurance options. Mears argues that Mississippi law imposed on Jones a "duty to advise [him] of available insurance." According to Mears, Jones breached this duty by advising him that no other insurer would insure his house past $200,000 because it was on a beach, when in fact other insurers would do so.

Under Mississippi law, a negligence claim consists of "duty, breach, causation, and harm." *Funches v. Progressive Tractor & Implement Co.*, 905 F.3d 846, 851 (5th Cir. 2018). As to duty, the Mississippi Supreme Court has held that "[a]n insurance agent must use that degree of diligence and care with reference thereto which a reasonably prudent [person] would exercise in the transaction of his own business." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1162 (Miss. 2010) (second alteration in original).

No. 18-60001

The district court rejected Mears's negligence claim, finding that he had failed to make a sufficient showing as to the first element. In doing so, the court noted that it was aware of "no case law holding that Jones had a duty to advise Plaintiff as to the availability of other coverage options that could be available on the market." The district court also distinguished this case from *Mladineo*, where the Mississippi Supreme Court found an insurance agent had breached his duty to the plaintiffs when he incorrectly represented to the plaintiffs that they did not need flood insurance because their house was not on a flood plain. *Id.* at 1157, 1163-64. The district court found the facts before it were materially dissimilar because Jones did not advise Mears as to what his coverage needs were. Instead, "[b]oth Jones and Plaintiff were aware that Plaintiff's coverage needs exceeded the $200,000 policy. Nevertheless, Plaintiff requested and received the $200,000 policy."

The district court reads *Mladineo* too narrowly. As the district court recognized, *Mladineo* held that while insurance agents lack "an affirmative duty to advise buyers regarding their coverage needs," when they "do offer advice to insureds, they have a reasonable duty to exercise care in doing so." *Id.* at 1163. We note at the outset that a fair reading of this capacious language regarding the duty to advise would include giving advice as to what coverage options exist. Appearing to anticipate this issue, Jones and Farm Bureau argue that Jones did not offer "advice" by making the alleged statement but rather merely "opined that only MRPIUA would insure his property."[3] However, this statement had the consequence of leading Mears to purchase the MRPIUA policy.[4] This brings Jones's statement within the holding of *Mladineo*. Jones

---

[3] For reasons that will become clear in our discussion of Mears's misrepresentation claim below, Jones and Farm Bureau choose the word "opine" deliberately.

[4] For illustration, consider the following hypothetical: if person A asks person B when she should drive to work in the morning, and person B tells person A that the roads are

therefore had a duty to exercise reasonable care in offering advice to Mears as to what insurance was available and (by implication) what insurance he should purchase.

Jones and Farm Bureau also contend that, even if this court finds that Mears had adequately demonstrated the existence of a duty, the breach of such duty did not proximately cause Mears's damages under the duty-to-read and imputed-knowledge doctrines. Under these conjoined doctrines, "an insured is charged with the knowledge of the terms of the policy upon which he or she relies for protection." *Mladineo*, 52 So. 3d at 1161. Where reading the policy would have revealed the claimed inadequacy of coverage, the Mississippi Supreme Court has found that proximate cause is lacking as a matter of law. *Id.* at 1164. Here, Jones and Farm Bureau claim that, assuming Jones actually made the representations alleged, his remarks directly contradicted the earlier Lexington quote for $400,000. This argument lacks merit for two reasons. First, the above language from *Mladineo* concerns the "policy upon which he or she relies for protection," *id.* at 1161, not nonbinding quotes such as the one from Lexington. Second, Mears testified that he understood the Lexington quote to no longer be valid at the time he accepted the MRPIUA policy because Jones had told him that Lexington "was not going to write the policy based on upon the location . . . on the beach." Therefore, because the alleged misrepresentation is not of the type "that would have been disclosed by reading the policy," *id.* at 1162-63, the duty-to-read and implied-knowledge doctrines are inapplicable.

Because the district court erred in determining that Mears failed to make a sufficient showing as to duty, we reverse and remand to the district

---

usually closed from 8 to 9 a.m., person B is impliedly advising person A to depart for work outside of this timeframe.

court to consider the remainder of Mears's claim that Jones was negligent in advising him that only the MRPIUA policy was available.

## C.

Mears also argues that Jones is liable for negligent misrepresentation for his alleged statement that only MRPIUA would insure the property. A cause of action for negligent misrepresentation under Mississippi law consists of the following elements:

> (1) a misrepresentation or omission of a *fact*; (2) that the representation or omission is material or significant; (3) that the person charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons; (4) that they reasonably relied upon the [defendant's] misrepresentation or omission; (5) that they suffered damages as a direct and proximate result of such reasonable reliance.

*Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992) (quoting *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990)). "The first element of negligent misrepresentation, misrepresentation [or omission] of a fact, must concern a *fact* rather than an *opinion*." *Id*. Additionally, it must "concern a past or present fact as contrasted with a promise of future conduct." *Id*. The district court found Jones's statement to Mears to be an inactionable opinion because it "speculates as to what unnamed third parties might do in unspecified circumstances."

We disagree. By his own admission, Jones had looked for insurance from other companies before Mears accepted the MRPIUA policy. This demonstrates that Jones's alleged remarks were not speculative but rather the result of his experience interacting with the three insurance companies.

Once again anticipating this issue, Jones and Farm Bureau advance a more robust view of what constitutes an opinion. According to them, this court should only consider Jones's remark a statement of fact if he had made it after

No. 18-60001

"exhaust[ing] each and every possible insurance option." Jones and Farm Bureau would have us hold that an insurance agent must survey the entire universe of insurance options before his assessment of the available coverage options could be deemed anything other than an opinion. This cannot be the standard. While this court need not determine the precise line between fact and opinion, we can definitively say that the standard does not require the speaker's certainty that the statement made is true. If this were the case, the very cause of action for negligent misrepresentation would disappear; if the existence of a factual statement required certainty or near certainty as to its truth or falsehood, then only intentional misrepresentations could be actionable.

The district court also erred when it found that Jones's alleged statement was inactionable because it dealt with future activity. This conclusion is based on a misreading of *Spragins*. In *Spragins*, the Mississippi Supreme Court found inactionable a bank's promise to buy plaintiff's property at a foreclosure sale because it did not "concern a past or present fact as contrasted with a promise of future conduct." 605 So. 3d at 781. But neither *Spragins* nor the cases it cites in support of this statement go so far as to hold that all statements as to future conduct are inactionable; rather, only promises made by the defendant as to his own future conduct fall within this rule. *See Spragins*, 605 So. 2d at 780 (citing *Bank of Shaw*, 573 So. 2d at 1360 ("[E]ven if [defendant] had made the representation, it was a promise of future conduct and not a statement of fact sufficient to constitute the kind of representation which would support a claim of negligent misrepresentation.")). The cases cited by the *Spragins* court, which formed the basis for that court's adoption of the future-conduct rule, also confirm this understanding. *See Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987) ("Murray also claims that [defendants] were negligent in promising promotions and job transfers. These negligent

10

misrepresentation claims, however, all suffer from a common defect. Promises of future conduct are not actionable as negligent misrepresentations."); *Margrove Inc. v. Lincoln First Bank of Rochester*, 54 A.D.2d 1105, 1106 (N.Y. App. Div. 1976) ("The mere failure of defendant to abide by its commitment cannot be made the basis of an action in tort for misrepresentation. The alleged negligent misstatements all relate to promised future conduct, if misstatements they be, and there is a lack of any element of misrepresentation as to an existing material fact so as to come within the doctrine of negligent misrepresentation as previously enunciated in the courts."). The representations here, on the other hand, did not concern a promise by Jones to perform some future act.

Moreover, even under the district court's understanding of *Spragins*, Mears's claim for negligent misrepresentation remains viable. For the reasons stated above, Jones's alleged statement concerned the availability of insurance as it existed *at the time he made the statement*, not as it would be in the future. Accordingly, the future-conduct rule from *Spragins* does not bar Mears's negligent misrepresentation claim.

Jones and Farm Bureau also argue that even if Jones's statement was an opinion, we should still affirm summary judgment because Mears did not reasonably rely on Jones's statement. They contend that Mears's reliance was unreasonable because (1) he only knew that Jones attempted to procure insurance from Lexington and MRPIUA and (2) he had already received the quote for $400,000 from Lexington. Neither contention has merit. As to Jones and Farm Bureau's first point, the existence of only two quotes does not of its own weight render Mears's reliance so unreasonable as to preclude the issue from going to a jury. A rational jury might conclude that it was reasonable for Mears to expect that Jones had extrapolated from even this small sample size that the desired coverage was not available. On Jones and Farm Bureau's

11

second point, as discussed above, Mears testified that Jones told him that the Lexington quote was no longer valid at the time Jones made the alleged statements. Accordingly, that quote cannot render Mears's reliance unreasonable.

Since the district court erred in finding that Mears failed to demonstrate the first element of a negligent misrepresentation claim, we reverse and remand to the district court to consider that claim under the framework articulated in this opinion.

## D.

Mears also appeals the district court's grant of summary judgment on the issue of punitive damages against Jones. Under Mississippi law, "[i]n order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006) (quoting *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.,* 759 So. 2d 1203, 1215 (Miss. 2000)). Despite Mears's conclusory allegations of "intentional falsehoods," the evidence adduced reveals, at the very most, ordinary negligence. We therefore affirm the district court's grant of summary judgment on the issue of punitive damages against Jones.

## III.

## A.

Mears also sought to hold Farm Bureau vicariously liable for Jones's alleged torts. He first claims that Farm Bureau can be held liable under the doctrine of apparent authority. Under Mississippi law:

> [T]he principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business

practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be so far as third persons are concerned, the apparent powers of an agent are his real powers.

*Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1180-81 (Miss. 1990) (alteration in original) (quoting *Steen v. Andrews,* 223 Miss. 694, 697-98 (1955)). While this doctrine typically comes up in the context of issues arising in contract law, it can also be applied in tort cases to hold a principal liable for the acts of its agent when the agent acts within the scope of his apparent authority. *See Jenkins v. Cogan*, 238 Miss. 543, 555 (1960) ("The general rule is well recognized . . . that where a servant commits a tortious act in furtherance of his master's business and within the real or apparent scope of his authority, the master becomes liable notwithstanding the fact that the act may not have been within the actual scope of the servant's employment."). To demonstrate apparent authority, a plaintiff must show the following: "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Andrew Jackson*, 566 So. 2d at 1181.

Mears fails on the first prong of this test. In order for Mears to succeed, he must point to actions on the part of Farm Bureau that clothed Jones with authority. *See id.* Although Mears presents evidence that would suggest to an outside observer that Jones was authorized by Farm Bureau as its agent, he does not tie that evidence to any acts by Farm Bureau Casualty[5] itself. For example, while Jones appears on the Farm Bureau website, it is actually the website for Harrison County Farm Bureau, a company that Jones and Farm

---

[5] To avoid confusion, we refer to appellee Farm Bureau as Farm Bureau Casualty in this section.

No. 18-60001

Bureau submit— unrebutted by Mears[6]—has no connection to appellee Farm Bureau Casualty. Absent any evidence to the contrary, a reasonable juror could not find that Jones's appearance on this website was the result of Farm Bureau Casualty's acts. The same goes for Jones's secretary (employed by Harrison County Farm Bureau), his office (provided by Harrison County Farm Bureau), and his furniture (paid for by Harrison County Farm Bureau). Mears fails to present any evidence linking Jones's appearance of authority to Farm Bureau Casualty. The only such evidence apparent on record is the agent contract between the two, which Mears admits he was not aware of. Mears therefore cannot point to this evidence as acts by Farm Bureau Casualty clothing Jones with authority, since—looking ahead to the second prong of the analysis—he could not say that he reasonably relied on those acts. Accordingly, Mears cannot hold Farm Bureau Casualty vicariously liable on the doctrine of apparent authority.

## B.

Mears also seeks to hold Farm Bureau vicariously liable as an employer of Jones. Farm Bureau contends that Jones was not its employee but rather an independent contractor. Under Mississippi law, an employer is responsible for the acts of negligence committed by its employee within the scope of the employee's authority. *Commercial Bank v. Hearn*, 923 So. 2d 202, 204 (Miss. 2006). However, "[a]n employer of an independent contractor is not responsible

---

[6] That is to say, Mears fails to point us to any evidence in the record actually substantiating such a rebuttal. While Mears claims that the website cited by Jones and Farm Bureau was not "the website used by Mears to locate Jones and Farm Bureau," he does not indicate which website he used, nor does he point to any evidence in the record of a Farm Bureau Casualty website that features Jones. Mears also claims that "Harrison County Farm Bureau Insurance, Mississippi Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Casualty are identified on the web paged cited by defendants as a single entity, 'Farm Bureau.'" This is false. The joint privacy notice Mears cites makes no reference to Harrison County Farm Bureau. We caution Mears against misrepresenting the record.

for the torts of the contractor." *Heirs & Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist.*, 743 So. 2d 311, 318 (Miss. 1999). The central question in cases such as this, then, is whether the agent (here, Jones) is an employee or independent contractor of the principal (here, Farm Bureau). The Mississippi Supreme Court has recognized that the distinction between an employee and an independent contractor is "a twilight zone filled with shades of gray." *Richardson v. APAC-Miss., Inc.*, 631 So. 2d 143, 149 (Miss. 1994) (quoting *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 199 (Miss. 1988)). The difference, while vague, depends primarily on the principal's ability to control the agent in his performance of their contract. *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994) (citing *Richardson*, 631 So. 2d at 148). The Mississippi Supreme Court also has articulated factors courts should use to conduct this inquiry:

> Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.

*Kisner v. Jackson*, 132 So. 90, 91 (Miss. 1931). Except in cases where the failure to extend liability to the principal would deprive the plaintiff of his remedy because of the agent's inability to respond in damages, courts are limited to the terms of the contract between the two parties in conducting this inquiry. *See*

*Richardson*, 631 So. 2d at 151. A contract's designation of an agent as an independent contractor is not dispositive of the inquiry; in such cases, the court must look beyond the contractual designation to determine whether the principal has the right to control the agent under the contract based on the factors articulated above. *See McKee*, 39 F.3d at 98.[7]

Here, Jones and Farm Bureau have submitted that Jones is "more than adequately insured against the claims asserted by Mears." Accordingly, under *Richardson*, we limit our analysis of the relationship between Jones and Farm Bureau to the four corners of their contract.

The contract between Jones and Farm Bureau contains many of the indicia of a principal/independent contractor relationship. First, while not dispositive, the contract expressly provides that Jones is an independent contractor. It also states that Jones has the "right to control [his] daily activities and means by which the provisions of [the contract] are carried out," "exercise independent judgment as to the persons from whom applications for insurance policies will be solicited," and "determine the time, place, and manner of soliciting and servicing policyholders of [Farm Bureau]."

In support of his argument that Jones was Farm Bureau's employee, Mears largely cites evidence from outside the agent contract. For example, Mears emphasizes that "Farm Bureau furnished the means, appliances,

---

[7] Jones and Farm Bureau argue that the Mississippi Supreme Court's holding in *Richardson* prohibits this court from looking beyond Jones's designation as an independent contractor under his agent contract with Fam Bureau because Mears has an adequate remedy against Jones. Jones and Farm Bureau misread *Richardson*. That case stands for the proposition that, where the plaintiff has an adequate remedy against the agent defendant, courts will not look beyond the four corners of a contract in conducting the independent contractor analysis. This is confirmed by the *Richardson* court's approving citation of the court's prior holding that a party cannot, by contract, designate an agent an independent contractor and at the same time retain the right to control the agent's business. *Richardson*, 631 So. 2d at 150 (quoting *Gulf Ref. Co. v. Nations*, 145 So. 327, 333 (Miss. 1933)). It is also confirmed by an absence of any cases where a court has deemed a party an independent contractor simply by virtue of his contractual designation.

computers, staff, offices and materials for Jones to sell all types of insurance." First, as discussed, Jones and Farm Bureau have submitted to this court that Harrison County Farm Bureau, and not Farm Bureau Casualty, furnished these resources. Second, and more to the point, even if such resources were furnished by Farm Bureau Casualty, there is nothing in the agent contract attesting to that fact.

Several provisions of the agent contract do cut in Mears's favor, however. Most notably, the contract requires Farm Bureau's authorization before Jones can "[m]ake, alter, or discharge any contract of insurance" or sell insurance for any other entity. It also requires Jones to comply with company guidelines and instructions, provided, however, that compliance "shall not interfere with [Jones's] status as an independent contractor."

For support, Mears cites *Elder v. Sears, Roebuck & Co.*, 516 So. 2d 231 (Miss. 1987), and *Miller v. Shell Oil Co.*, 783 So. 2d 724 (Miss. Ct. App. 2000). In *Elder*, the Mississippi Supreme Court found that a Sears catalogue merchant was an employee of Sears for purposes of vicarious liability in a slip-and-fall lawsuit. 516 So. 2d at 236. In *Miller*, the Mississippi Court of Appeals found that a truck stop lessee was an employee of Shell Oil company. *Miller*, 783 So. 2d at 729. Instead of analogizing his case to the above cases, or even explaining how Mississippi courts conduct the independent contractor analysis, Mears simply avers that "[a] review of the *Miller* and *Elder* factors clearly establishes that Jones was acting as a servant and not as an independent contractor when he was advising Mears and misrepresenting the availability of insurance."

A review of the two cases discloses several important differences between those cases and the case at bar, however. In *Miller*, the court noted that Shell "furnished the means, appliances and materials of the work." *Miller*, 783 So. 2d at 727. It also noted that the agent was "required to merchandise and

No. 18-60001

promote Shell Products" and "maintain the truck stop . . . in a neat, clean and orderly manner." *Id.* Similarly, in *Elder*, Sears required its agent to "maintain his premises in a safe, clean and attractive condition" and reserved the right to "review the merchant's books and records and to inspect the premises," as well as "fix prices of goods sold and control[] the manner and time of payment." *Elder*, 516 So. 2d at 234. No analogous provisions exist in the agent contract here. Additionally, both cases appear to have injected some version of an apparent-authority analysis into their opinions. *See id.* at 235 ("Beyond this, the premises are arranged so that members of the consuming public think they are dealing with Sears."); *Miller*, 783 So. 2d at 729 ("Shell, notwithstanding the provision in the jobber contract purporting to shield it from liability, had indicia of control and induced members of the public doing business with its agent to believe they were doing business with Shell.").[8] As we have discussed here, Farm Bureau may not be held liable under the doctrine of apparent authority in the case at bar.

Jones and Farm Bureau point us to another, more analogous, case. In *College Network v. Mississippi Department of Employment Security*, 114 So. 3d 740 (Miss. Ct. App. 2013), the Mississippi Court of Appeals determined that a College Network salesperson was an independent contractor.[9] In that case, the

---

[8] In light of *Richardson*'s four-corners doctrine, it is unlikely that the injection of such apparent-authority reasoning into an independent contractor analysis remains appropriate under existing law, at least where the plaintiff has an adequate remedy without the invocation of vicarious liability. *See Richardson*, 631 So. 2d at 151. Since *Elder* precedes *Richardson*, we view the latter case as clarifying the former. To the extent that *Miller*'s reasoning is inconsistent with *Richardson*, we are bound to follow the latter opinion, as it comes from the highest court in the state.

[9] Mears argues that *College Network* is inapplicable because it involved an attempt by a plaintiff himself to be recognized as an employee under Mississippi unemployment compensation law. These distinctions do not preclude *College Network*'s application to this case. The unemployment compensation law at issue in that case expressly cross-referenced Mississippi common law and the court therefore applied the same analysis that we apply here, albeit with a slightly different recitation of the relevant factors. *Coll. Network*, 114 So. 3d at 744. Nor does it matter that *College Network* involved a plaintiff's attempt to be

salesperson operated under the College Network name and College Network restricted the territory in which the salesperson could operate; set prices; provided the training, materials, and forms; and approved all orders before a sale occurred. *Id*. at 745. The court nonetheless found that the salesperson was an independent contractor because these constraints implicated activities "before and after the actual work of conducting sales" and did not reflect College Network's right to control "how, when or by what means [the salesperson] conducted sales." *Id.* at 746, 747.

We find *College Network* highly persuasive in the case at bar. While Farm Bureau required Jones to obtain its authorization before he sold insurance, it did not dictate the manner in which he sold it. For example, Farm Bureau did not prescribe his sales techniques or dictate how Jones solicited customers or what customers he solicited. Nor did Farm Bureau dictate what hours Jones worked or where he worked. While the contract did require compliance with Farm Bureau's guidelines, the contract makes clear that such guidelines should not interfere with his status as an independent contractor. While we are wary of such language, Mears has not explained how the enforcement of such guidelines would alter Jones's conducting of sales, nor has he even discussed what they entail. The only constraints on Jones's work therefore appear to relate only to matters before and after the actual work of conducting sales, which the *College Network* court refused to grant substantial weight. *Elder* and *Miller*, on the other hand, involved much more substantial control of the agent's operation of its business for the reasons described above.

---

recognized as an employee; save for *Richardson* (which does not alter the analysis on this point), this court is aware of no Mississippi case holding that the independent contractor analysis is in any way altered by the fact that it is the plaintiff seeking to be recognized as an employee.

No. 18-60001

Accordingly, we find that Jones was an independent contractor under Mississippi law and that Farm Bureau thus cannot be held vicariously liable for his alleged torts. We therefore affirm the district court's grant of summary judgment in favor of Farm Bureau as to vicarious liability.


## C.

Finally, Mears seeks to hold Farm Bureau directly liable for its failure to train Jones. A failure-to-train claim proceeds under Mississippi law along the same lines as a standard negligence claim: the plaintiff must show duty, breach, causation, and harm. *See Cameron v. Werner Enters., Inc.*, No. 2:13CV243-KS-JCG, 2015 WL 4393068, at *2 (S.D. Miss. July 15, 2015); *Booth v. S. Hens, Inc.* 244 So. 3d 888, 891 n.2 (Miss. Ct. App. 2018). The district court rejected this claim because Mears did not cite any authority establishing that "Farm Bureau had a duty to train Jones on any product that was not its own." We express no opinion on this line of reasoning, for we believe there is a sounder basis for affirmance. *Meister v. Tex. Adjutant Gen.'s Dep't*, 233 F.3d 332, 339 (5th Cir. 2000) ("[I]t is well-settled that we will not reverse a judgment of the district court if it can be affirmed on any legally sufficient ground, even one not relied upon by the district court."). As we have already determined, the relationship between Jones and Farm Bureau was one of an independent contractor and a principal. Mears cites no authority, and we are aware of none, holding principals liable for the failure to train their independent contractors. Indeed, there is at least one extrajurisdictional authority that has held directly to the contrary. *See Jones v. Sw. Newspapers Corp.*, 694 S.W.2d 455, 457 (Tex. App.—Amarillo 1985, no writ) ("[T]hat duty [to train], involving as it must the control of the manner of performing the independent contractor's undertaking, is repugnant to the status of an independent contractor."). This argument was raised in Jones and Farm Bureau's brief, but Mears does not respond to it in

his reply. Absent some showing that Mississippi law would be hospitable to such an expansion of failure-to-train liability, we refuse to recognize such an expansion. *See SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 442 (5th Cir. 2008) ("When making an *Erie* guess, '[o]ur task is to attempt to predict state law, not to create or modify it.'") (quoting *Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)). Accordingly, the district court properly rejected Mears's failure-to-train claim.

Because the district court did not err in dismissing all of Mears's claims against Farm Bureau, it also did not err in granting summary judgment on the issue of punitive damages. We therefore affirm the district court's grant of summary judgment on the issues of direct liability and punitive damages as to Farm Bureau.

## IV.

We therefore AFFIRM as to Mears's claim for punitive damages against Jones and Farm Bureau and for vicarious and direct liability against Farm Bureau and REVERSE and REMAND as to Mears's negligence and negligent misrepresentation claims against Jones. Each party shall bear its own costs.